**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:19-CV-00182-HBB**


**JAMES T. THOMPSON**                                                                           **PLAINTIFF**


**VS.**


**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                         **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of James T. Thompson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 12) and Defendant (DN 13) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 8).   By Order entered February 21, 2020, (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

On February 13, 2016, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 44, 333-34).   Plaintiff alleged that he became disabled on September 14, 2015 as a result of a traumatic brain injury, arm wounds, depression, severe mood swings, leg injury, memory loss, arthritis, and trigeminal neuralgia (Tr. 44, 382).   Administrative Law Judge Walter R. Hellums ("ALJ") conducted a video hearing from St. Louis, Missouri, on June 22, 2018 (Tr. 44, 118-20). Plaintiff and his attorney, Andrew Gregory Mabry, participated by video from Bowling Green, Kentucky (Id.).   Deborah Ann Determan, a vocational expert, testified during the video hearing (Tr. 44, 118-20, 480-82).

In a decision dated August 20, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 44-57).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 14, 2015, the alleged onset date (Tr. 46).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: neurocognitive disorder (secondary to traumatic brain injury ("TBI")), asthma, migraine, depression, anxiety, and posttraumatic stress disorder ("PTSD") (Id.).   Additionally, the ALJ indicated that the rest of Plaintiff's alleged impairments are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at a "severe" level for a continuous period of 12 months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

2

Appendix 1 (Tr. 47).   Before moving to the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff must avoid more than occasional exposure to hazards, such as unprotected heights and unguarded moving machinery; he must avoid more than frequent exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation; he is able to understand, remember, and carry out simple tasks that can be learned with a short demonstration; he is able to sustain attention, concentration, and persistence for two hours at a time throughout an eight-hour workday with customary breaks; he is able to perform work that does not require interaction with the public; and he is able to respond appropriately to occasional changes in workstation or task (Tr. 49).

At the fourth step, the ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any past relevant work (Tr. 55).   At the fifth step, ALJ considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 55-57).   The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Tr. 56-57).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 14, 2015 through the date of the decision, August 20, 2018 (Tr. 57).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 330-32).   The Appeals Council denied Plaintiff's request for review (Tr. 1-6).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

### Finding Nos. 1 and 2

Finding No. 1 indicates that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019 (Tr. 46).   Plaintiff asserts that Finding No. 1 is not supported by substantial evidence because the Social Security Administration's Certified Earnings Record-PIA determination run on February 23, 2018 shows the date last insured to be December 31, 2020 (DN 12 PageID # 1204, citing Tr. 366).   Defendant concedes that the agency records show Plaintiff's insured status expires on December 31, 2020 (DN 13 PageID #1212 n. 2, citing Tr. 366).   As the ALJ's decision predates either of these dates, Defendant asserts that the ALJ's error did not affect his decision-making, and, thus, was a harmless error (Id.).   The Court agrees with Defendant and concludes the ALJ's error is harmless.

Finding No. 2 indicates Plaintiff has not engaged in substantial gainful activity since September 14, 2015, the alleged onset date (Tr. 46).   Plaintiff acknowledges that the alleged onset date in the case was September 14, 2015 but points out that the evidence in the records indicate his roll-over accident occurred on September 16, 2015 (DN 12 PageID # 1204).   Defendant points out that Plaintiff's application lists September 14, 2015 as his onset date but other paperwork he completed indicates Plaintiff stopped working on September 16, 2015 (DN 13 PageID #1212 n. 1, citing Tr. 333, 382).   Defendant asserts that the two-day discrepancy does not make any appreciable difference in the ALJ's analysis or this litigation (Id.).   The court agrees.

Finding No. 3

1.  Arguments of the Parties

Plaintiff takes issue with the ALJ's determination that his lumbar spine impairment is not a medically determinable impairment and his obesity is a non-severe impairment because it is relatively mild and does not appear to affect his physical functioning (DN 12 PageID # 1204-05). Plaintiff asserts that these omissions are not harmless because the ALJ ignored evidence from the non-examining state agency medical consultant, Dr. Sudhideb Mukherjee, indicating both conditions are severe and impose physical limitations on Plaintiff's RFC (Id. citing Tr. 238-40).

Defendant maintains these purported errors are harmless because the ALJ found that Plaintiff has severe impairments and considered all of Plaintiff's medically determinable impairments throughout the remaining steps in the sequential evaluation (DN 13 PageID # 1215-23).  Defendant points out that although Plaintiff received pain medication for his vague allegations of pain, his lumbar spine impairment was not a medically determinable impairment established by objective evidence such as a CT scan or an MRI (Id. citing Tr. 47, 240, 529, 778-85).  In fact, the CT scan of Plaintiff's lumbar spine, on September 16, 2015, showed no evidence of acute lumbar spine fracture, malalignment, or any other abnormality (Id. citing Tr. 529). Further, Defendant points out that Plaintiff did not indicate back pain or limitations due to a back condition in his testimony or the forms he filled out in connection with the application (Id. citing Tr. 125-38, 396-400, 441-45).  Defendant also points out that Plaintiff did not indicate his obesity imposed limitations in his testimony or the forms he filled out in connection with the application (Id. citing Tr. 125-38, 381-82, 396-400, 441-45).

2.  Discussion

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).  To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities."  20 C.F.R. §§ 404.1522(a), 416.922(a).  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).  To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.  20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).  To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1509, 416.909.

In connection with Finding Nos. 3 and 5, the ALJ found Plaintiff's alleged lumbar spine impairment was not a medically determinable impairment because the diagnosis of this condition was not established by objective evidence (Tr. 47, 50, 52).  The ALJ acknowledged that Plaintiff's primary care physician prescribed pain medication for Plaintiff's alleged back pain but noted that imaging of Plaintiff's spine had been negative for abnormality (Tr. 47, 50, 52 citing Tr. 529, 568, 778-84, 1112, 1120, 1128).  The ALJ also noted that physical examination of Plaintiff regularly

8

showed normal findings, such as normal strength and gait (Tr. 50, 52 citing 1112, 1120, 1128). In connection with Finding No. 3, the ALJ noted that Plaintiff is obese because his body mass index (BMI) ranges around 32 to 37 (Tr. 47).   The ALJ concluded that Plaintiff's obesity is relatively mild and does not appear to affect his physical functioning because physical examination regularly showed normal findings, such as normal strength and gait (Id. citing Tr. 1112, 1120, 1128).   The above findings are supported by substantial evidence in the record.

The ALJ assigned little weight to the opinion of the non-examining state agency medical consultant, Dr. Mukherjee, that Plaintiff's spine disorder and obesity are medically determinable severe impairments that limit Plaintiff's RFC to light work with postural and environmental limitations (Id. citing Tr. 235-36, 238-40).   In reaching this conclusion, the ALJ noted although Dr. Mukherjee's opinion did not, as a general matter, deserve as much weight as an opinion of an examining or treating source, the opinion deserved some weight because the doctor had a high level of understanding of the Social Security disability program and reviewed the evidence in the record when forming his opinion (Tr. 52).   The ALJ explained that evidence received at the hearing level supported a finding of less restrictive limitations than those identified by Dr. Mukherjee (Id.).   Further, for the reasons set forth in the paragraph above, the ALJ explained that Plaintiff's alleged lumbar spine impairment was not a medically determinable impairment established by objective evidence (Id.).   The ALJ's findings addressing the weight assigned to the opinion rendered by Dr. Mukherjee are supported by substantial evidence in the record and comport with applicable law.  *See* 20 C.F.R. § 404.1527(c)(1)-(6) and Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (opinions from non-examining sources are weighed

based on factors such as the lack of an examining relationship, specialization, consistency, and supportability).

Finding No. 5

1.   Arguments of the Parties

Plaintiff reiterates his argument that the ALJ failed to properly consider the medical opinion of Dr. Mukherjee (DN 12 PageID # 1207-08).   Plaintiff asserts that the RFC cannot be supported by substantial evidence in the record because the ALJ assigned little weight to the only medical opinion in the record addressing his physical functional limitations (Id. citing Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008)).   Additionally, Plaintiff argues that substantial evidence in the record does not support the ALJ's finding that he experiences occasional headaches (Id. PageID # 1208-09).

Defendant asserts that the ALJ's assignment of weight to Dr. Mukherjee's functional opinion is supported by substantial evidence in the record (DN 13 PageID # 1215-23).   Further, the ALJ properly assessed Plaintiff's migraine headaches with significant postural and mental restrictions (Id. PageID # 1223-30).

2.   Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical

source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a).

For the reasons set forth above, the ALJ's assignment of weight to the functional assessment of Dr. Mukherjee is supported by substantial evidence and comports with applicable law.   At the second step, the ALJ found Thompson's migraines are a severe impairment (Tr. 46). At the third step, the ALJ noted that the evidence did not suggest that Plaintiff's migraines caused an altered state of consciousness or that he experienced a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; or concentrating, persisting, or maintaining pace, or adapting or managing oneself (Tr. 47).   At the fourth step, the ALJ noted that the medical evidence indicated Plaintiff complained of occasional headaches (Tr. 50).   The ALJ noted that mental status examination and testing did not fully corroborate Plaintiff's allegations (Tr. 51).   For example, mental status examination as well as standardized testing repeatedly showed mild to moderate impairments in memory and attention/concentration, fair eye contact, and constricted affect (Id. citing Tr. 608-15, 701, 704, 706, 708, 710, 756, 843-46, 926, 928, 981, 1037, 1039).

The ALJ also observed that more recent mental status examination showed normal memory and concentration (Id. citing Tr. 1106-29, 1130-44, 1146).   The ALJ noted that Plaintiff's mental health treatment had been conservative, limited to antidepressant/cognitive advancing medications, therapy, and counseling (Id.). Additionally, following the traumatic brain injury, Plaintiff participated in outpatient rehabilitation for impairments and recall and reasoning as well as skilled speech therapy, but those services did not appear to be ongoing (Id.).   The ALJ concluded that Plaintiff's treatment records were not consistent with his subjective reports of

11

disabling symptoms and suggested that his symptoms were not as severe as he alleged (Id.).   The ALJ found that Plaintiff's mental impairments/migraines and their associated symptoms, including occasional headaches, memory loss, chronic irritability, mood swings, difficulty making decisions, dysphoric mood, panic attacks, and social withdrawal, limited him to the following: he must avoid more than occasional exposure to hazards, such as unprotected heights and unguarded moving machinery; he is able to understand, remember and carry out simple tasks that can be learned with a short demonstration; is able to sustain attention, concentration, and persistence for two hours at a time throughout an eight-hour workday with customary breaks; he is able to perform work that does not require interaction with the public; and is able to respond appropriately to occasional changes in workstation or task (Id.). The ALJ gave great weight to the opinions of the state agency psychological consultants because he found their opinions were consistent with mental status examinations showing mild moderate impairments in memory and attention/concentration, fair eye contact, and constricted affect (Tr. 53).   The ALJ considered but gave little weight to the opinion of Plaintiff's therapist, Derek Mason LMFT, because marriage and family therapists are not considered acceptable medical sources and the opinion was largely conclusory regarding Plaintiff's ability to work (Id.).

While Plaintiff has pointed to his complaints about migraines in doctor's reports, this is not objective medical evidence substantiating the severity of his condition.   Mitchell Comm'r of Soc. Sec., 330 F. App'x 563, 569 (6th Cir. 2009).   Further, the issue is whether substantial evidence supports the ALJ's findings, not whether Plaintiff can find evidence in the record that supports a different conclusion.   Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713-14 (6th Cir. 2012) (provided the ALJ has cited substantial evidence, reversal is not warranted even when substantial

evidence would support an opposite conclusion).   The undersigned concludes that the ALJ's findings regarding Plaintiff's migraine headaches are supported by substantial evidence in the record and comport with applicable law.   Further, the Court has reviewed the record and concludes that the RFC is supported with substantial evidence in the record and comports with applicable law.

Finding Nos. 10 and 11

1.   Arguments of the Parties

Plaintiff challenges Finding Nos. 10 and 11 by arguing the hypothetical question to the vocational expert is based on an RFC that does not accurately portray his physical and mental limitations (DN 12 PageID # 1210-11).   Defendant contends that Plaintiff's challenge to the ALJ's hypothetical question is a meritless reformulation of his argument attacking the adequacy of the RFC determination (DN 13 PageID # 1230-31).

2.   Discussion

At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional and national economies that the plaintiff can perform, given his/her residual functional capacity.   *See* Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).   Here, the

13

vocational expert's testimony is based on a hypothetical question that accurately portrays Plaintiff's physical and mental impairments (Tr. 139-40). The vocational expert identified a significant number of jobs in the national economy that Plaintiff can perform considering his RFC, age, education, and past work experience (Tr. 140-41). Therefore, Finding Nos. 10 and 11 are supported by substantial evidence in the record and the Commissioner has sustained his burden of demonstrating there exists a significant number of jobs in the national economy that Plaintiff can perform.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

August 4, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:      Counsel

14